**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

PAUL ECHOLS,

                                        **Plaintiff,**

        **vs.**                                                    **1:20-CV-00519**
                                                                   **(MAD/CFH)**

**ROBERT KNOTH,**

                                        **Defendant.**

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **SUSSMAN & ASSOCIATES** | **MICHAEL H. SUSSMAN, ESQ.** |
| 1 Railroad Avenue, Suite 3 | **JONATHAN R. GOLDMAN, ESQ.** |
| P.O. Box 1005 | |
| Goshen, New York 10924 | |
| Attorneys for Plaintiff | |
| | |
| **JOHNSON LAWS, LLC** | **COREY A RUGGIERO, ESQ.** |
| 646 Plank Road, Suite 205 | **GREGG T. JOHNSON, ESQ.** |
| Clifton Park, New York 12065 | |
| Attorneys for Defendant | |

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff Paul Echols commenced this action on May 7, 2020, asserting a single cause of

action for excessive force in violation of the Fourth Amendment against Defendant Robert Knoth.

*See* Dkt. No. 1.  Currently before the Court is Defendant's motion for summary judgment.  *See*

Dkt. No. 34.  For the reasons that follow, Defendant's motion is denied.

**II. BACKGROUND**

On the night of September 8, 2018, Plaintiff traveled to New Paltz, New York, to hang out

with friends.  *See* Dkt. No. 46-1 at ¶ 1.  Plaintiff and his friends arrived at P&G Restaurant & Bar

("P&G's") in New Paltz at approximately 11:30 p.m.  *See id.* at ¶¶ 3-4.  Plaintiff had already

consumed some beer before he departed for New Paltz, and consumed three additional beers at P&G's. *See id.* at ¶¶ 2, 5, 8. After the third beer, Plaintiff stepped outside of P&G's and observed four-to-five uniformed New Paltz police officers standing across the street. *See id.* at ¶ 9. Plaintiff then approached two women who were also standing outside P&G's, "flirted" with them, and "grabbed one of the two women around the waist." *Id.* at ¶¶ 10-11. During his interaction with the two women, a nonparty named Nick Rosario approached Plaintiff from behind and punched Plaintiff "square in the mouth area." Dkt. No. 34-2 at 23-24. Plaintiff stepped back from "the force of the punch" but could not recall whether he was bleeding from his mouth or whether he had blood on his clothing immediately after Rosario struck him. *Id.* at 26; *see also* Dkt. No. 46-1 at ¶ 21.

After Rosario struck Plaintiff, Kelly Sherman—one of Plaintiff's friends—immediately struck Rosario in the left cheek causing Rosario to fall straight down, unconscious. *See* Dkt. No. 46-1 at ¶¶ 22-23. Plaintiff then observed that the four police officers had approached on foot from across the street. *See id.* at ¶ 24. The officers walked past Plaintiff to arrest Sherman. *See id.* at ¶ 25. While Sherman was arrested, Plaintiff stood within "two arms reach" of the officers and attempted to explain to one of them that Rosario had assaulted him, and that Sherman had only been sticking up for him. *Id.* at ¶¶ 27-28. Plaintiff was "frustrated and overwhelmed at the time" and, upon being informed by a police officer that his mouth was bleeding, Plaintiff exclaimed "look at my fucking mouth, look at my mouth." *Id.* at ¶¶ 29-30.

In response to this statement, one of the male police officers instructed Plaintiff to "back the fuck up" while attempting to push Plaintiff back with one of his hands. *See id.* at ¶ 31. Upon being pushed, Plaintiff "swatted downwards," coming into contact with the officer's arm, while saying "don't touch me." *Id.* at ¶ 32. The officer then informed Plaintiff that he was being placed

under arrest, handcuffed him, and two officers began to walk him to a patrol vehicle parked less than fifty yards away. *See id.* at ¶ 34. Defendant—one of the police officers at the scene—was on Plaintiff's right side as he was being walked over to the patrol vehicle, while the other officer was on Plaintiff's left side. *See id.* at ¶ 39. When they reached the vehicle, the officer on Plaintiff's left side released Plaintiff's arm and unlocked the rear driver's side door so that Plaintiff could be placed in the vehicle. *See id.* at ¶ 40.

The parties' versions of the events begins to diverge at this point. Defendant asserts that he used his right hand on Plaintiff's left arm and attempted to put Plaintiff into the vehicle, while Plaintiff asserts that he voluntarily sat down in the vehicle without assistance. *See id.* at ¶ 44. In either event, Plaintiff then called Defendant a "fat, racist bitch." *See id.* at ¶ 47. Defendant then asserts that contact between Defendant's body and Plaintiff's left side caused Plaintiff to be pushed over onto his right side, with Defendant on top of him and Defendant's right arm trapped underneath Plaintiff. *See id.* at ¶¶ 49-50. Defendant then claims that Plaintiff spit blood into Defendant's face and mouth area, whereupon Defendant struck Plaintiff three or four times in rapid succession. *See id.* at ¶¶ 54-56. In contrast, Plaintiff asserts that, after he insulted Defendant, Defendant jumped on him, pushed him down, and proceeded to repeatedly strike Plaintiff in the mouth. *See id.* at ¶ 54. Plaintiff asserts that he only spit blood into Defendant's face *after* Defendant struck him. *See id.*

The parties agree that the altercation ended with "blood everywhere in the car" and Plaintiff saying, "How's that blood taste? How's that blood taste?" to Defendant after Defendant had exited the vehicle. *See id.* at ¶¶ 71, 73. Plaintiff was subsequently taken to Kingston Hospital, where he was told he had a broken jaw that required surgery. *See id.* at ¶ 42.[1] Plaintiff

---

[1] This citation is to Plaintiff's Counterstatement of Facts.

was charged with (1) one count of resisting arrest, a Class A misdemeanor, *see* N.Y. Penal Law §

205.30; (2) one count of obstructing governmental administration in the second degree, a Class A

misdemeanor, *see id.* § 195.05; (3) one count of disorderly conduct, a violation, *see id.* §

240.20(1); and (4) two counts of harassment in the second degree, a violation, *see id.* § 240.26(3).

Plaintiff was ultimately convicted of one count of disorderly conduct and one count of harassment

in the second degree. *See* Dkt. No. 46-1 at ¶ 86.

Defendant now moves for summary judgment, arguing that Plaintiff's excessive force

claim must be dismissed because (1) Plaintiff is collaterally estopped from attempting to relitigate

certain facts that were previously determined as part of his criminal conviction for harassment in

the second degree; (2) the undisputed record establishes that Defendant used appropriate force

and caused only *de minimis* injuries to Plaintiff; and (3) Defendant is entitled to qualified

immunity. *See* Dkt. No. 34-38.  Plaintiff opposes the motion. *See* Dkt. No. 46.

### III. DISCUSSION

#### A.    Standard of Review

A court may grant a motion for summary judgment only if it determines that there is no

genuine issue of material fact to be tried and that the facts as to which there is no such issue

warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43

F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the

court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at

36-37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a

motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex

Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the

court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).  "'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005) (quotation omitted).  "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id.* (quoting *Anderson*, 477 U.S. at 252).  "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' ... and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quotations omitted).

**B.      Plaintiff's Criminal Conviction and Collateral Estoppel**

Defendant argues that "Plaintiff is collaterally estopped from denying that he spat blood into the face and mouth of [Defendant] *prior* to any use of force upon him by [Defendant]" because that finding was material and essential to Plaintiff's criminal conviction for harassment. Dkt. No. 34-38 at 14-19.  In opposition, Plaintiff argues that collateral estoppel does not apply here because "the issue of the timing and sequence of events was neither material to nor actually litigated or decided in the criminal proceeding."  Dkt. No. 46 at 13.

"Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must apply New York collateral estoppel law to New York state court judgments." *Zappin v. NYP Holdings Inc.*, 769 Fed. Appx. 5, 10 (2d Cir. 2019) (citing *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 93 (2d Cir. 2005)).  Under New York law, collateral estoppel bars relitigation of a legal or factual issue that was previously decided where:

> "(1) the issues in both proceedings are identical, (2) the issue in the
> prior proceeding was actually litigated and actually decided, (3)
> there was [a] full and fair opportunity to litigate in the prior
> proceeding, and (4) the issue previously litigated was necessary to
> support a valid and final judgment on the merits."

*Washington v. N.Y. City Dep't of Educ.*, 740 Fed. Appx. 730, 732 (2d Cir. 2018) (quoting *Grieve*

*v. Tamerin*, 269 F.3d 149, 153 (2d Cir. 2001)).   "Use of collateral estoppel 'must be confined to

situations where the matter raised in the second suit is identical in all respects with that decided in

the first proceeding and where the controlling facts and applicable legal rules remain unchanged.'"

*Faulkner v. Nat'l Geographic Enters., Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) (quoting *Comm'r v.*

*Sunnen*, 333 U.S. 591, 599-600 (1948)).   Application of the doctrine of collateral estoppel "is

discretionary" and "depends upon 'general notions of fairness involving a practical inquiry into

the realities of the litigation.'"   *Russo v. Irwin*, 49 A.D.3d 1039, 1041 (3d Dep't 2008) (quoting

*Jeffreys v. Griffin*, 1 N.Y.3d 34, 41 (2003)).

   "For a question to have been actually litigated ... , it must have been properly raised by the

pleadings or otherwise placed in issue and actually determined in the prior proceeding."

*Stegemann v. Rensselaer County Sheriff's Off.*, No. 20-3316-CV, 2021 WL 5492966, *4 (2d Cir.

Nov. 23, 2021) (quoting *Halyalkar v. Bd. of Regents of State of N.Y.*, 72 N.Y.2d 261, 268 (1988)).

"An issue is 'necessary or essential only when the final outcome hinges on it.'"   *Bifolck v. Philip*

*Morris USA Inc.*, 936 F.3d 74, 82 (2d Cir. 2019) (quoting *Bobby v. Bies*, 556 U.S. 825, 835

(2009)) (emphasis omitted).   "This requirement 'protect[s] against unfairness[ ] by ensuring that

the issue [was] really disputed and that the loser ... put out his best efforts.'"   *Id.* (quoting *S.E.C. v.*

*Monarch Funding Corp.*, 192 F.3d 295, 307 (2d Cir. 1999)); *see also United States v. Hussein*,

178 F.3d 125, 129 (2d Cir. 1999) (holding that when parties have issues unnecessary to a

judgment, parties may have "limited incentive to litigate [it] fully," and the issue may have been

"less likely to receive close judicial attention") (citation omitted).

The order of the events that unfolded in the back of the police vehicle—*i.e.*, whether Plaintiff spit on Defendant before or after Defendant repeatedly struck Plaintiff—was never actually decided during Plaintiff's criminal trial and was, in any event, unnecessary to support a valid and final judgment on the merits.  A person is guilty of harassment in the second degree "when, with intent to harass, annoy or alarm another person: He or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose."  N.Y. Penal Law § 240.26(3).  Here, the criminal court summarily concluded that Plaintiff was guilty of harassment without elaborating, at all, on the arguments it credited or the facts it relied on when it made that determination.  *See* Dkt. No. 34-4 at 686.

Despite that, Defendant argues that the criminal court could only have concluded that Plaintiff was guilty by "rejecting Plaintiff's 'self-defense' theory based upon his false sequence of events," and that this Court must therefore do the same.  Dkt. No. 48-2 at 9.  Although the Court agrees with Defendant that "the issue of whether Plaintiff *intentionally* spat blood into Defendant's face and mouth without justification" was essential to Plaintiff's criminal conviction for harassment, *id.* (emphasis added), the criminal court could have validly found that Plaintiff "intentionally" spat in Defendant's face *after* he hit Plaintiff, and still concluded that Plaintiff was guilty of harassment.  The mere fact that Defendant testified as to his version of events before the guilty verdict was rendered does not, contrary to Defendant's arguments, "clearly establish[]" or "confirm" that his version of events is true.  *Id.* at 7.[2]

---

[2]  Defendant appears to argue that all findings of fact related to a conviction must be taken as true in subsequent civil actions.  *See* Dkt. No. 46-2 at 9 (citing *Johnson v. Mauro*, No. 5:16-CV-00622, 2019 WL 2336070, *4 (N.D.N.Y. June 3, 2019) ("Under New York law, 'a judgment of conviction is conclusive proof of the underlying facts in a subsequent civil action'")) (quotation omitted).  However, Defendant (1) has not established that the criminal court ever made a finding

Accordingly, the Court declines to apply collateral estoppel under the circumstances of this case.

## C.     Excessive Force

Defendant argues that the "undisputed record evidence before this Court makes it abundantly clear that" Defendant used a "hard hand technique to free his right arm and prevent a second blood and saliva-spitting attack upon him by Plaintiff, and facilitate his extrication from the vehicle." Dkt. No. 34-38 at 21-23.  Under those "undisputed" facts, Defendant asserts that Plaintiff's excessive force claim must be dismissed because "it is clear that his measured use [of] physical force was reasonable as a matter of law." *Id.* at 24.  Defendant also argues that "the record evidence before this Court clearly establishes that Plaintiff's only claimed physical injury—an alleged broken jaw—is solely attributable to Plaintiff being struck by Rosario" and, therefore, "any such injury claimed to be the product of Knoth's use of force upon him is nonexistent (or, at the very least, *de minimis* in nature) and, hence, unactionable." *Id.* at 30.  In opposition, Plaintiff argues that Defendant is relying "upon his own version of the facts, which a jury is not required to credit" and, "viewing the evidence in the light most favorably to [Plaintiff], a reasonable jury could find that [Defendant] punched [Plaintiff] in the face without provocation and for no legitimate purpose and, thus, his use of force was objectively unreasonable." Dkt. No. 46 at 14-15.

Claims that police officers used excessive force during an arrest are analyzed under the Fourth Amendment's reasonableness standard.  *See Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  In order to establish a

---

with respect to the order of events, and (2) misapprehends *Johnson*, which still required that the "underlying facts" were "actually litigated and necessarily decided" before being awarded preclusive effect.  *See Johnson*, 2019 WL 2336070, at *4.

Fourth Amendment excessive force claim, an individual must demonstrate that the actions of the arresting police officer were objectively unreasonable in light of the surrounding circumstances. *See Owens v. Colburn*, 860 F. Supp. 966, 972 (N.D.N.Y. 1994) (citing *Graham*, 490 U.S. at 397). "The test of 'reasonableness' is not capable of precise definition or mechanical application; therefore, careful attention must be paid to the facts and circumstances of the case." *Id.* (citation omitted).

The court's application of the reasonableness standard is guided by (1) the nature and severity of the crime precipitating the arrest, (2) whether the suspect posed an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to flee. *See Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (citing *Graham*, 490 U.S. at 396. As to the third factor, "[t]he fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some* degree of force, but it does not give the officer license to use force without limit. The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Sullivan v. Gagnier*, 225 F.3d 161, 165-66 (2d Cir. 2000) (emphasis in original).

Moreover, to support an excessive force claim, the plaintiff must establish that the defendant used more than *de minimis* force. *See Feliciano v. Thomann*, 747 Fed. Appx. 885, 887 (2d Cir. 2019). Even conduct that caused some physical pain and resulted in side effects need not be compensated if a jury finds that such injuries were *de minimis*. *See Kerman v. City of New York*, 374 F.3d 93, 123 (2d Cir. 2004). Nevertheless, while "not every push or shove constitutes excessive force," *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995) (citing *Graham*, 490 U.S. at 396), a show of force by an officer that is overly disproportionate to the risk of harm may support

a claim for excessive force. *See Gersbacher v. City of New York*, No. 1:14-CV-7600, 2017 WL 4402538, *11 (S.D.N.Y. Oct. 2, 2017) (denying the defendant police officers' motion for summary judgment on the plaintiff's excessive force claim where evidence showed that the plaintiff verbally opposed the arrest, but did not attempt to flee or attack the arresting officer, calling into question whether the force used by the arresting officer, which caused relatively minor injuries, was excessive). The "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Brown*, 798 F.3d at 100-01.

After considering the record as a whole, the Court concludes that there are genuine issues of material fact that preclude a finding that Defendant's use of force was reasonable as a matter of law or that Plaintiff's injuries were *de minimis*. These issues of fact include whether (1) Defendant's arm was trapped under Plaintiff in the back of the vehicle or Defendant jumped on Plaintiff after Plaintiff insulted him; (2) Plaintiff spit in Defendant's face before or after Defendant struck him; and (3) Plaintiff's injuries were caused by Rosario's initial punch or Defendant's subsequent ones. Contrary to Defendant's characterization of the evidence, there is support in the record for Plaintiff's version of events and, if a jury were to credit Plaintiff's evidence, they could reasonably find that Defendant's use of force qualifies as excessive and that the injuries caused by Defendant were more than *de minimis*.

Accordingly, Defendant's motion for summary judgment on Plaintiff's excessive force claim as a matter of law is denied.

**D.    Qualified Immunity**

Defendant argues that, "[e]ven if this Court were to determine that a constitutional right had been violated by [Defendant] by his use of force ... such right was not clearly established" at

the time of Defendant's conduct.  Dkt. No. 34-38 at 28.  In making this argument, Defendant

relies on his prior assertion that it is undisputed that he struck Plaintiff to facilitate his extrication

from the vehicle and prevent a second spitting attack by Plaintiff.  *See id.*  In opposition, Plaintiff

argues that Defendant's analysis is "premised on disputed facts" and his request for summary

judgment should be denied.  Dkt. No. 46 at 21.

        Qualified immunity is an affirmative defense and, as such, Defendants bear the burden of

proving that the privilege of qualified immunity applies.  *See Coollick v. Hughes*, 699 F.3d 211,

219 (2d Cir. 2012).  "Under the doctrine of qualified immunity, 'government officials performing

discretionary functions generally are shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.'"  *Tracy v. Freshwater*, 623 F.3d 90, 95-96 (2d Cir. 2010)

(quoting *Kelsey v. County of Schoharie*, 567 F.3d 54, 60-61 (2d Cir. 2009)).  The Court is mindful

that qualified immunity is "'an entitlement not to stand trial or face the other burdens of

litigation,'" and that this privilege is "'effectively lost if a case is erroneously permitted to go to

trial.'"  *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526

(1985)).

        Courts engage in a two-part inquiry to determine whether the doctrine of qualified

immunity bars a suit against government officials.  *See Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir.

2006).  First, a court must consider whether the facts, construed in favor of the party asserting the

injury, "demonstrate a violation of a constitutional right."  *Id.* (citing *Saucier v. Katz*, 533 U.S.

194, 201 (2001)).  Second, a court must also determine "whether the officials' actions violated

'clearly established statutory or constitutional rights of which a reasonable person would have

known.'"  *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  Courts may exercise their

discretion in deciding which prong should be considered first.  *See Pearson v. Callahan*, 555 U.S. 223, 243 (2009).

"It is well established that qualified immunity may operate as a defense to excessive force claims." *Betts v. Rodriquez*, No. 15-CV-3836, 2017 WL 2124443, *4 (S.D.N.Y. May 15, 2017). "Even if the force is objectively unreasonable, an officer may still be eligible for qualified immunity if it was objectively reasonable for the officer to believe that her action did not violate clearly established law." *Keene v. Schneider*, 350 Fed. Appx. 595, 596 (2d Cir. 2009).  "The Supreme Court has made clear that officers who have used excessive force may be entitled—under the qualified immunity doctrine—to an extra layer of protection 'from the sometimes hazy border between excessive and acceptable force.'"  *De Michele v. City of New York*, No. 09-CV-9334, 2012 WL 4354763, *17 (S.D.N.Y. Sept. 24, 2012) (quoting *Saucier*, 533 U.S. at 206).

Because material factual disputes remain as to the circumstances surrounding the use of force in this case, summary judgment on qualified immunity is inappropriate.  *See, e.g., Kerman v. City of New York*, 261 F.3d 229, 240 (2d Cir. 2001) (holding that "summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness") (citation omitted).  Construing the facts in Plaintiff's favor, Defendant jumped on and repeatedly struck Plaintiff in the face—while he was restrained in the back of a police vehicle—in response to an insulting remark.  It is well established law that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston, Texas v. Hill*, 482 U.S. 451, 461 (1987) ("'Speech is often provocative and challenging.... [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive

evil that rises far above public inconvenience, annoyance, or unrest'") (quotation omitted); *see also Kerman*, 261 F.3d at 242 ("Speech directed at police officers will be protected unless it is likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or unrest"); *Hagedorn v. Cattani*, 715 Fed. Appx. 499, 506 (6th Cir. 2017) (holding that calling a police officer an "asshole" was protected speech and did not constitute fighting words); *Sawyer v. Asbury*, 537 Fed. Appx. 283, 297 (4th Cir. 2013) (holding that the "'mere use of foul language ... does not justify an objectively reasonable police officer knocking [an arrestee] down, jumping on him, and breaking his nose'") (quotation omitted); *Jackson v. Tellado*, 236 F. Supp. 3d 636, 667 (E.D.N.Y. 2017) (holding that "it is clearly established that verbal objections to police actions do not warrant use of physical force") (collecting cases).  Of course, if the jury were to fully credit Defendant's version of events, Defendant might be entitled to qualified immunity—but that determination cannot be made until the jury has resolved the multiple issues of material fact that surround the use of force in this case.

Accordingly, Defendant's motion for summary judgment under the doctrine of qualified immunity is denied.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Defendant's motion for summary judgment (Dkt. No. 34) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  July 6, 2022
       Albany, New York

Mae A. D'Agostino
U.S. District Judge